Department of Employment Security
No. 84-101

## APPEAL OF JOHN F. BORICHEVSKY
## (New Hampshire Department of Employment Security)

May 6, 1985

*Peter S. Espiefs*, of Keene, by brief and orally, for the plaintiff.

*Gregory H. Smith*, attorney general (*Daniel J. Mullen*, assistant attorney general, on the brief and orally), for the State.

BROCK, J.  The claimant, John F. Borichevsky, appeals from the denial of partial unemployment compensation benefits by the department of employment security (DES). The principal issue raised on appeal is whether the provisions of RSA 282-A:32, I(a) (Supp. 1983) disqualify the plaintiff from receiving benefits because he "voluntarily quit" a part-time job after being laid off from his

full-time job. For the reasons that follow, we conclude that the claimant is entitled to unemployment compensation benefits.

In July 1982, Mr. Borichevsky was employed as a full-time draftsman by New Jersey Machine of New Hampshire (New Jersey Machine) in Lebanon and as a part-time cook by Pizza Hut, Inc. On July 9, he was laid off by New Jersey Machine and on July 17, DES granted him partial unemployment benefits under RSA 282-A:26. Because he could not financially sustain his family, he left his job with Pizza Hut on July 28, in order to live with relatives in Brattleboro, Vermont.

Relying on RSA 282-A:32, I(a) (Supp. 1983), DES denied the claimant further payment of partial benefits, finding that he had left his part-time employment for personal reasons and not for good cause attributable to his employer. The appeal tribunal affirmed, and the claimant petitioned the commissioner of DES to reopen the case. After his petition was denied, the claimant appealed to the appellate division, which remanded the case to the appeal tribunal for reconsideration on the basis that Borichevsky had met the "unemployed individual" status required by RSA 282-A:32, I(a) (Supp. 1983) and was not under a disqualification. The appeal tribunal refused to change its decision. After a second appeal to the appellate division, which this time upheld the appeal tribunal's decision of July 26, 1983, the claimant appealed to this court.

RSA 282-A:32, I(a) (Supp. 1983) provides in relevant part that an individual shall be disqualified for unemployment compensation benefits if:

> "He left his work voluntarily without good cause in accordance with rules of the commissioner. This *section shall not apply* and benefits shall be paid without regard thereto where an unemployed individual, not under a disqualification, accepts employment which would not have been deemed suitable work under subparagraph (d) and terminates such employment within a period of not more than 4 consecutive weeks of employment with or without good cause . . . ."

(Emphasis added.)

We begin our analysis by noting that RSA chapter 282-A does not define the term "unemployed individual," nor does it address the problem of the individual who holds both full-time and part-time jobs and is laid off from one or both of these positions.

■ One of the primary purposes of the unemployment compensation statute is "to provide some measure of relief against involuntary unemployment." *Nashua Corp. v. Brown*, 99 N.H. 205, 206, 108

A.2d 52, 53 (1954). It is not disputed that the claimant was involuntarily laid off from New Jersey Machine. In addition, it is not disputed that he left his part-time job at Pizza Hut voluntarily and without good cause attributable to the employer, notwithstanding the fact that he had good personal reasons for doing so.

Given these facts, we are asked to determine whether the claimant is an "unemployed individual" who "accepted" unsuitable employment within the meaning of RSA 282-A:32, I(a) (Supp. 1983).

The claimant argues that he was deemed an "unemployed individual" as of July 9, 1982, under the July 23, 1982 decision of the DES declaring him eligible for unemployment compensation benefits and that, therefore, pursuant to RSA 282-A:32, I(a) (Supp. 1983) he could not have "accepted" employment as an "unemployed individual" until that date. The State contends that because the claimant was already employed at New Jersey Machine on June 27, 1982, the date on which he began his employment with Pizza Hut, he was not an "unemployed individual" at the time he accepted his employment and therefore does not qualify for benefits under the "voluntary quit" exception of the statute.

There is contradiction in both the claimant's and the State's interpretation of the facts as they apply to the statute. The most reasonable interpretation, therefore, and the one which most satisfies the primary purpose underlying our unemployment compensation statute (given that DES originally considered the plaintiff to be unemployed and paid him partial benefits), is that RSA 282-A:32, I(a) (Supp. 1983) is not applicable to the facts of this case because the disqualification applies only to work left voluntarily and not to the work from which the claimant was involuntarily laid off.

The claimant was deemed by the DES to be entitled to partial benefits when he was involuntarily dismissed from New Jersey Machine. We hold that nothing in RSA chapter 282-A (Supp. 1983) prevents him from quitting a part-time position which he had already held prior to being laid off from a full-time position.

The State also argues that the "voluntary quit" exception applies only if non-suitable work is involved and that Borichevsky's part-time job at Pizza Hut was suitable work. We disagree. The record indicates that there was a substantial difference between the two jobs as to both the type of training required and the salary earned. *See* RSA 282-A:32, I(d)(2)(B); *see Tobin v. Maine Equipment Sec. Com'n*, 420 A.2d 222, 225–26 (Me. 1980). Although the claimant had been offered the possibility of training for a management position at Pizza Hut, no specific or definite offer was ever made.

■ Finally, the claimant seeks an award of attorney's fees under the standard set by *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977). Although benefits in this case were originally denied on August 13, 1982, due to multiple appeals within the departmental structure, and no final decision was forthcoming until February 16, 1984, the record does not support a finding that this delay was attributable to bad faith on the part of the DES. We find nothing in the record to support the claimant's claim of bad faith and, accordingly, conclude that he is not entitled to attorney's fees.

*Reversed and remanded.*

All concurred.