Department of Employment Security
No. 84-334

APPEAL OF EDNA MAE LOCKE
(New Hampshire Department of Employment Security)

December 4, 1985

*Michael A. Fuerst,* New Hampshire Legal Assistance, of Concord, by brief for the petitioner.

*Stephen E. Merrill,* attorney general (*Daniel J. Mullen,* assistant attorney general, on the brief), by brief for the State.

PER CURIAM. This is an appeal from a decision of the New Hampshire Department of Employment Security (DES) that the petitioner was ineligible to receive unemployment benefits as a result of a temporary lay-off during the summer months of 1983. We reverse.

The petitioner was employed by D.A.K.A. School and College Food Services, Inc. (DAKA) for more than three years prior to her temporary lay-off between semesters at Plymouth State College in the spring of 1983. She was on call throughout the summer and worked from time to time catering school functions and other events which were held on the campus at Plymouth.

DAKA is a private, profit-making corporation headquartered in Wakefield, Massachusetts, providing food services for Plymouth State College on a contract basis. It is not a part of the college or the university system in New Hampshire, nor is it appended to a State agency or any political subdivision of the State, and it does not deal exclusively with the college.

The petitioner's case was heard before a DES certifying officer, who denied benefits. An appeal tribunal upheld the certifying officer, and the commissioner declined to reopen the case. The appellate division then affirmed the previous findings. Petitioner appealed to this court and, for the reasons set forth below, we reverse.

In prior years, the petitioner had been able to collect full or partial unemployment benefits for the weeks that DAKA had no work for her. However, the New Hampshire unemployment compensation statute was amended effective June 7, 1983. The following is the pertinent section of that statute:

"An unemployed individual shall not be eligible to receive benefits:

(b) Based on services in any other capacity for an educational institution, *including services for a service organization for any educational institution* for any week which commences during a period between 2 successive academic years or terms . . . ."

RSA 282-A:31, II(b) (Supp. 1983). (Emphasis added.) DES argues that it followed the statute in rendering its decision to deny benefits. The most pertinent portion of the law for purposes of this case, *i.e.*, the term "service organization," was not defined by the legislature anywhere in the statute, and DES argues that it applied to the term its "usual and common meaning" (quoting from the statutory construction language of *Silva v. Botsch*, 120 N.H. 600, 601, 420 A.2d 301, 302 (1980)). RSA 21:2.

■■ We have no record of what DES considered to be the usual and common meaning of the term "service organization," and we find the meaning unclear on its face. "It is well established that the words in the statute itself are the touchstone of the legislature's intention." *Greenhalge v. Town of Dunbarton*, 122 N.H. 1038, 1040, 453 A.2d 1295, 1296 (1982). However, since we find the term ambiguous, the question of whether private corporations are included within the term "service organization" under RSA chapter 282-A is one of first impression. *Id.* "When construing an ambiguous statute, this court looks to both the legislative intent and the objectives of the legislation." *Id.* at 1040, 453 A.2d at 1296. We look to the legislative history of the 1983 amendment to determine the intent of the change. N.H.S. JOUR. 554–59 (vol. 1, 1983); N.H.H.R. JOUR. 648 (1983). It is clear from the testimony before the legislative committee that the legislature was attempting to address a different, though related, problem. Employees of educational institutions, such as the university system, were hired on a percentage basis. They worked "82% time" and accepted positions fully aware that the institutions did not expect them to work between academic semesters, and they were reasonably assured that jobs would be waiting at the end of the semester break. Some of these individuals began to file for unemployment benefits during the summer months. Since the employees were hired with the understanding that they would not work between semesters, and their positions were so defined, the legislature amended the statute with the purpose of disallowing unemployment benefits to this group.

■ The petitioner does not fit in this category. Her employer was a private for-profit corporation which considered semester breaks to

be slack time, such as seasonal employers would, and required its employees to be on-call during these times. In addition, the record clearly shows that the petitioner was fearful that if she were not available during the slow business times, her job would not be assured when business in the area returned to its normal pace during the academic year.

The New Hampshire unemployment compensation statute is only required to conform to minimum standards of eligibility as established by federal law, but it is "free to impose stricter requirements." *Rivera v. Patino*, 524 F. Supp. 136, 140 (N.D. Cal. 1981). The pertinent federal statute in this case, 26 U.S.C. § 3304(a)(6)(A), excludes from eligibility for unemployment compensation benefits employees of an educational institution and employees of an "educational service agency," which is further defined as "a governmental agency or governmental entity which is established and operated exclusively for the purpose of providing such services to one or more educational institutions. . . ." 26 U.S.C. § 3304(a)(6)(A)(iv). Although the State statute may be made stricter than the federal one, we find no indication that this was the intent of the New Hampshire legislature. Thus, the term in the federal statute which is most similar to the term "service organization" in the State statute is "educational service agency," and the definition of that term excluded private corporations. We are persuaded that the legislature intended eligibility for benefits in this case, both by the more explicit language of the parallel federal statute and by the fact, as we have stated before, that "[o]ne of the primary purposes of the unemployment compensation statute is 'to provide some measure of relief against involuntary unemployment.'" *Appeal of John Borichevsky*, 126 N.H. 461, 462, 494 A.2d 772, 773 (1985) (quoting *Nashua Corp. v. Brown*, 99 N.H. 205, 206, 108 A.2d 52, 53 (1954)). We hold that the petitioner was involuntarily unemployed, that a private for-profit corporation is not a "service organization" within the definition of that term in RSA 282-A:31, II(b) (Supp. 1983), and that petitioner is therefore eligible for unemployment benefits.

*Decision of appeal tribunal reversed.*

JOHNSON, J., did not sit.